**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Jane Doe T.G.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 25 C 9339** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **UHS of Hartgrove, Inc., d/b/a Hartgrove** | ) | |
| **Behavioral Health Systems; Universal** | ) | |
| **Health Services, Inc., and UHS of Delaware,** | ) | |
| **Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## Memorandum Opinion and Order

Plaintiff, Jane Doe T.G., has filed a ten-count complaint, asserting claims of sexual harassment, negligence, and other violations of state law, which arise out of her stays in a psychiatric hospital operated or owned by Defendants, UHS of Hartgrove, Inc. ("Hartgrove"), Universal Health Services, Inc. ("UHSI"), and UHS of Delaware, Inc. ("UHSD"). Defendants have moved to dismiss. Their motions are granted because Plaintiff fails to state a federal claim for sexual harassment, she has not sufficiently alleged diversity jurisdiction over her remaining state-law claims, and the Court declines to exercise supplemental jurisdiction over the state-law claims at this time.

### I.    Background

Defendant Hartgrove is a psychiatric hospital located at 5730 West Roosevelt Road in Chicago. Defendant UHSI owns several behavioral health facilities, including Hartgrove. Hartgrove receives federal financial assistance for education programs it provides to patients. UHSI also owns UHSD, which is UHSI's "management subsidiary." (Am. Compl. ¶ 26.)

Plaintiff's claims arise out of three month-long inpatient hospital stays at Hartgrove in 2010 and 2011, when she was between 14 and 16 years old. (Am. Compl. ¶ 12.) Plaintiff suffered sexual abuse during each stay. During the first hospitalization, a male Caucasian staff member forced female patients, including Plaintiff, to kiss one another, while he laughed at them. Plaintiff's underwear disappeared multiple times. She believes it was stolen by this same staff member, who also had inappropriate conversations with female patients and showed favoritism to those who "accepted his advances." (*Id.* ¶ 86.c.)

During Plaintiff's second hospitalization, the same staff member tried to coerce her to spend time alone with him. When she refused, he spoke ill of her to other staff members, in hopes of prolonging her hospitalization.

During Plaintiff's third hospitalization, a male African-American staff member, a teacher, forced Plaintiff to touch another student inappropriately. The teacher mocked and laughed at Plaintiff.

Plaintiff did not report any of this misconduct at or near the time it occurred. She had observed that, when other Hartgrove patients submitted complaints, staff members were not receptive or responsive to them, or if they did respond, it was to retaliate against the complaining patients.

Plaintiff alleges that "Hartgrove was on notice during the years of 2010 to 2011 that incidents of sexual, physical and emotional abuse were rampant within its facility." (*Id.* ¶ 105.) She states that "[m]ore than 100 former patients" have filed lawsuits against Hartgrove and the other defendants for alleged abuse, some of which date back to the "early 1990s." (*Id.* ¶ 57.) There are "at least 50" reports of abuse at Hartgrove in Chicago Police Department records, including some during the relevant time frame, such as the following:

> a. A minor female patient reporting sexual abuse by another male patient at Hartgrove on July 30, 2007.
>
> b. A minor female patient reporting that she was drugged and raped by a male staff member at Hartgrove on November 19, 2010.
>
> c. A minor male patient reporting that a male hospital attendant at Hartgrove molested him in his room while he slept on December 21, 2010.
>
> d. A minor male patient reporting sexual abuse by his therapist at Hartgrove on September 23, 2011.

(*Id.* ¶ 59-60.)

In 2010, the Illinois Department of Children and Family Services ("DCFS") tasked the University of Illinois at Chicago ("UIC")'s Mental Health Policy Team with conducting a quality-of-care review of Hartgrove. The resulting UIC report, which was released in September 2011, stated that Hartgrove "exposed patients to 'a pattern of inadequate care,' including: failing to protect minors from harm; failing to create safe treatment environments; failing to adequately staff its facilities; failing to adequately train and supervise staff; failing to develop individual treatment plans; failing to develop proper discharge and aftercare plans; and failing to conduct effective monitoring." (*Id.* ¶ 65.c.) The report documented approximately 100 violent incidents between December 2010 and mid-June 2011—a time frame during which Plaintiff was a patient at the hospital. DCFS stopped placing children at Hartgrove in June 2011, after seeing a preliminary draft of the report.

Plaintiff is a citizen of California. She alleges that UHSI is incorporated in Delaware, with its principal place of business in King of Prussia, Pennsylvania. She alleges that Hartgrove's principal place of business is in Chicago, Illinois, but she does not allege where it is incorporated. She does not allege where UHSD is incorporated or where it has its principal place of business.

Plaintiff's complaint contains ten counts. The only federal claim is in Count I, for sexual harassment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). The remaining counts assert claims under Illinois common law: Count II, for common-law

3

negligence; Count III, for negligent hiring; Count IV, for negligent retention; Count V, for negligent supervision; Count VI, for negligent misrepresentation; Count VII, for assault and battery; Count VIII, for negligent infliction of emotional distress; Count IX, for intentional infliction of emotional distress, and Count X, for breach of fiduciary duty.

## II.    Legal Standards

"A motion under [Federal] Rule [of Civil Procedure] 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Under this standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).

## III.    Analysis

### A.  Title IX

Title IX provides, in pertinent part, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). This provision is enforceable through an implied private right of action. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 65 (1992). The ban on sex "discrimination" prohibits an employee of a covered institution from sexually harassing or abusing any student—

4

or, in this case, patient—of the institution. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Franklin*, 503 U.S. at 75).

Title IX does not allow for vicarious liability, nor may a Title IX plaintiff prevail by relying on "principles of *respondeat superior* or constructive notice." *Gebser*, 524 U.S. at 281. An institution is liable under Title IX only "when it *knows* that discrimination has occurred and fails to take reasonable action in response." *C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 541 (7th Cir. 2022) (en banc). Therefore, there are "two prerequisites for institutional liability under Title IX," which are as follows:

> *First*, an official of the recipient entity with authority to take corrective action to end the discrimination must have *actual knowledge* of discrimination in the recipient's programs. *Second*, the official's response to that knowledge must amount to deliberate indifference to discrimination reflecting an official decision by the recipient entity not to remedy the violation. Together these requirements ensure that a recipient is liable in money damages only for its own official decision to break its contractual promise not to discriminate.

*C.S. v. Madison Metro. Sch. Dist.*, 34 F.4th 536, 541 (7th Cir. 2022) (cleaned up) (citing *Gebser*, 524 U.S. at 290-91). Hartgrove argues that Plaintiff fails to state a claim because she does not plausibly allege that Hartgrove had "actual knowledge" of the sexual harassment Plaintiff suffered at the time of her hospitalizations.

Plaintiff does not allege that she reported the incidents of abuse she suffered or that any Hartgrove officials "with authority to take corrective action" were aware of those specific incidents. She contends, instead, that Hartgrove was aware of numerous reports of incidents of violence and abuse taking place within the hospital, and this was enough to provide Hartgrove with actual knowledge of the problem. According to Plaintiff, the "'totality of these allegations permit[s] the inference that [Hartgrove administrators] had actual knowledge of the abuse.'" (Pl.'s

Resp. at 5, Dkt. No. 51 (quoting *Davis v. Joliet Twp. High Sch. Dist. 204 Bd. of Educ.*, No. 24 CV 1701, 2025 WL 3268487, at *5 (N.D. Ill. Nov. 24, 2025).)

Plaintiff's theory of notice, however, is critically different than in *Davis*, the case she cites. There, school administrators knew of an improper relationship between the plaintiff and a specific school employee, including specific details about that particular employee spending long periods of time with the plaintiff in his office with the door locked and the blinds drawn. *Id.* at *2, 5. Plaintiff's theory of actual knowledge is based on her allegations that Hargrove officials knew of harassment or abuse that was both (a) suffered by other victims and (b) committed by other abusers, without any demonstrated connection to the specific incidents of abuse she suffered or to her own abusers. Plaintiff cites no cases in which courts have embraced any such theory, nor is the Court aware of any. The only cases the Court is aware of that have even "considered a similar theory of liability" to Plaintiff's are nonprecedential, and they "have rejected it." *See Doe v. Bibb Cnty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015) (citing *Doe v. Blackburn Coll.*, No. 06-3205, 2012 WL 640046, at *11 (C.D. Ill. Feb. 27, 2012) ("Plaintiff . . . claims [Defendant] was on notice because of prior instances of sexual harassment on campus . . . . However, . . . the prior incidents on [Defendant]'s campus, none of which had common perpetrators and all of which had known perpetrators, did not give [Defendant] actual notice of the impending random sexual assault of Plaintiff."); *T.Z. v. City of New York*, 635 F. Supp. 2d 152, 170-71 (E.D.N.Y. 2009) ("The school cannot be held liable to plaintiff under Title IX for the assault against C.G. under a theory that it knew of past assaults, given that the school's knowledge was generalized, and there was no specific threat posed to C.G. or posed by her assailants."); *Schaefer v. Las Cruces Pub. Sch. Dist.*, 716 F. Supp. 2d 1052, 1081 (D.N.M. 2010)), *aff'd,* 688 F. App'x 791 (11th Cir. 2017).

The reasoning of *Doe v. Bibb County School District* is instructive. The court acknowledged that Title IX does not necessarily "foreclose the possibility of . . . liability based on a defendant's knowledge of prior harassment of victims other than the plaintiff by different perpetrators," but "actual knowledge has to mean something," and it does not mean "constructive notice." *Bibb Cnty.*, 83 F. Supp. 3d at 1309. The suggestion that the defendant institution "*should have* anticipated" sexual abuse based on "past instances of sexual harassment involving" different victims, different perpetrators, "different scenarios, and, in one case, different [facilities] within its system" essentially reduced the Title IX "actual knowledge" standard to one of constructive notice. *Id.* The Eleventh Circuit, in a nonprecedential disposition, affirmed that decision, explaining that, while it could not "foreclose the possibility that a plaintiff may demonstrate adequate notice based upon similar prior incidents that involve different victims and perpetrators," it "agree[d] with the district court's conclusion that the circumstances" of the previous sexual assaults were not "sufficiently similar to those in [the plaintiff's] attack so as to provide" the defendant with actual knowledge of the plaintiff's predicament. *Doe v. Bibb Cnty. Sch. Dist.*, 688 F. App'x 791, 796 (11th Cir. 2017).

The Seventh Circuit and district courts within its boundaries have dutifully rejected Title IX claims that are improperly based only on what Title IX defendants "knew or should have known." *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 605 (7th Cir. 2008) ("The Supreme Court has flatly rejected applying a 'knew or should have known' standard to Title IX claims."), *Doe A v. Plainfield Cmty. Consol. Sch. Dist. 202*, No. 21 C 4460, 2022 WL 1641684, at *4 (N.D. Ill. May 24, 2022) (citing *Hansen*); *see also Wilson v. Johnson*, No. 1:22-CV-336-HAB, 2023 WL 8018477, at *7 (N.D. Ind. Nov. 20, 2023); *Doe v. Evergreen Park Elementary Sch. Dist. 124*, No. 17-CV-3774, 2017 WL 6731867, at *4 (N.D. Ill. Dec. 29, 2017) ("[T]hese

generalized, conclusory allegations are insufficient to reasonably infer that Defendants had actual knowledge of these specific incidents of misbehavior.") (citing *Gabrielle M. v. Park Forest-Chicago Heights, IL. Sch. Dist. 163*, 315 F.3d 817, 823-24 (7th Cir. 2003)). Such claims do not meet the standard the Supreme Court has set for "actual knowledge of the teacher's [or other employee's] conduct." *Gebser*, 524 U.S. at 289; *see Doe v. Galster*, 768 F.3d 611, 617-18 (7th Cir. 2014) (explaining that "[t]he standard is 'actual knowledge' . . . [and] administrators have actual knowledge only of the incidents that they witness or that have been reported to them," not when they know only "that something might be happening and could be uncovered by further investigation") (citing *Gabrielle M.*, 315 F.3d at 823-24 (explaining that "actual—not constructive—notice is the appropriate standard," and the defendant did not have actual knowledge before any "officials observed or . . . anyone reported sexual behavior by [the perpetrator] towards [the victim] (or anyone else)")).

As in *Doe v. Bibb County School District*, this Court is not prepared to say that Title IX always requires officials to know of prior harassment either by the same harasser or of the same victim, but it agrees that the "actual knowledge" question is helpfully framed as whether "the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address *the kind of harassment upon which plaintiff's legal claim is based.*" *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009) (emphasis added), *cited in Bibb Cnty.*, 83 F. Supp. 3d at 1307. Plaintiff cites wide-ranging examples of abuse of various kinds—some sexual, some not, some against other female patients, some not—and this blunderbuss approach does not demonstrate that Hartgrove had actual knowledge sufficient to induce remedial measures to address the kind of harassment Plaintiff endured. The prior incidents she describes are not "sufficiently similar" to those she

8

suffered to plausibly provide Hartgrove with "actual knowledge." *See Bibb Cnty.*, 88 F. App'x at 796; *cf. Wilson v. Cook Cnty.*, 742 F.3d 775, 782-83 (7th Cir. 2014) (reasoning that harasser's employer would not obviously have known that the harassment of the plaintiff, allegedly in violation of her due-process rights under 42 U.S.C. § 1983, would follow from the harasser's prior acts of misconduct because they were not sufficiently similar); *Moody v. City of Newport News, Va.*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (explaining that the plaintiff did not state a claim under § 1983 based on a pattern of constitutional violations because they were not sufficiently similar to the violation at issue) (citing *Connick v. Thompson*, 563 U.S. 51, 63 (2011)).

Plaintiff's Title IX claim suffers from the same deficiency. She does not plausibly allege that Hartgrove knew of abuse she suffered, that it knew of abuse committed by her harassers, or that Hartgrove knew of abuse "sufficiently similar" to Plaintiff's "so as to provide" Hartgrove with knowledge that was tantamount to "actual knowledge" of Plaintiff's abuse. *See Bibb Cnty.*, 688 F. App'x at 796. Under these circumstances, she does not state a claim under Title IX.

### B. State-Law Claims

Plaintiff concedes some of the state-law claims that Defendants have moved to dismiss, but not all of them. The Court need not consider the substantive arguments in Defendants' motions any further, however. The Court lacks original jurisdiction over the state-law claims, and it will not exercise supplemental jurisdiction over them, given that Plaintiff has failed to state a federal claim.

Plaintiff asserts subject-matter jurisdiction on two separate bases. First, she alleges federal-question jurisdiction under 28 U.S.C. § 1331 because her Title IX claim arises under federal law. However, as the Court has already explained, she does not state a claim under Title IX, nor does she assert any other federal claim. Next, she alleges diversity jurisdiction under 28 U.S.C. § 1332

9

"because . . . Plaintiff and Defendant reside in different states, and the amount in controversy exceeds $75,000." (Am. Compl. ¶¶ 8-9.) Plaintiff alleges that she is a citizen of California, but she does not adequately allege the citizenship of all Defendants.

Defendants are corporations, and, for purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff alleges that UHSI is incorporated in Delaware and has its principal place of business in Pennsylvania, which suffices to allege that UHSI is a citizen of those two states. And Plaintiff alleges that Hartgrove's principal place of business is in Illinois. But she does not allege where Hartgrove is incorporated. *See Kafeel v. CJDropshipping*, No. 24 CV 11929, 2025 WL 2675947, at *3 (N.D. Ill. Sept. 18, 2025) (explaining that jurisdictional allegations are deficient where "the Complaint . . . does not specify the state in which Defendant is incorporated"); *Midland States Bank v. Holden Fam., LLC*, No. 3:24-CV-01214, 2024 WL 2864370, at *1 (S.D. Ill. June 6, 2024) (same). As for UHSD, Plaintiff does not allege either where it is incorporated *or* where it has its principal place of business. *See Huon v. Breaking Media, LLC*, No. 11 C 3054, 2012 WL 13390265, at *1 (N.D. Ill. Sept. 14, 2012). Given the importance of subject-matter jurisdiction, *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008), more precision is necessary before the Court can consider the substance of the state-law claims. *See Zeocrystal Indus., Inc. v. Fox Broad. Co.*, 923 F. Supp. 132, 135 (N.D. Ill. 1996) (Shadur, J.); *YTB Travel Network of Illinois, Inc. v. McLaughlin*, No. 09-369, 2009 WL 1473918, at *1 (S.D. Ill. May 27, 2009) ("[L]itigants must properly plead diversity jurisdiction, and not simply assert that it exists. When one party is a corporation, both the state of incorporation and the state of its principal place of business must be identified in a pleading alleging diversity jurisdiction.") (internal citation omitted); *see generally*

10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction).").

To be sure, the Court may exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367, even now, after dismissing the only federal claim. *See Huspon v. Foster*, No. 20CV01230, 2022 WL 823698, at *3 (S.D. Ind. Mar. 16, 2022) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). But the Court may also "decline to exercise supplemental jurisdiction over a claim" after it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Declining to exercise supplemental jurisdiction is the typical course, when the federal claims fall out of the case at the pleading stage. *See Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (explaining that "only in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction" once federal claims have fallen out of the case before trial). Because the Court has dismissed Plaintiff's federal claim, it declines to exercise supplemental jurisdiction over the remaining state-law claims and will not determine now whether they are plausibly alleged under Rule 8 and *Twombly/Iqbal*. It will make that determination when and if Plaintiff files an amended complaint that states a plausible federal claim, or corrects the citizenship allegations. *See St. Bernardine Med. Ctr. v. Health Care Serv. Corp.*, No. 24-CV-02906, 2025 WL 933804, at *7 (N.D. Ill. Mar. 27, 2025); *Porch v. Univ. of Illinois at Chicago, Sch. of Med.*, No. 21-CV-3848, 2022 WL 3082353, at *1 (N.D. Ill. Aug. 3, 2022). For now, Plaintiff's state-law claims are dismissed. *See Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior

11

to trial."). The dismissal is without prejudice and with leave to replead these claims in any amended complaint Plaintiff might file.

The parties raise and discuss other issues, but the foregoing discussion suffices to resolve the present motions. For the reasons set forth above, Plaintiff fails to state a federal claim, and Defendants' motions to dismiss are granted.

### Conclusion

Defendants' motions to dismiss [39] [44] [46] are granted. The dismissal is without prejudice. Plaintiff may file an amended complaint by 9/1/26. If she files nothing by that deadline, the Court will dismiss the case without prejudice, on the assumption that Plaintiff no longer wishes to pursue the matter in this Court.

**SO ORDERED.**                                   **ENTERED: August 6, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**

12